# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

_____

STONERIDGE SOFTWARE, LLC,                    File No. _____
and LEVRIDGE, LLC,

     Plaintiffs,

        vs.                                          **COMPLAINT**

AGTEGRA COOPERATIVE,

     Defendant.

_____

Plaintiffs Stoneridge Software, LLC and Levridge, LLC, as and for their Complaint against Defendant Agtegra Cooperative, state and aver as follows:

## JURISDICTION AND PARTIES

Plaintiffs and related entities

1.    Plaintiff Stoneridge Software, LLC ("Stoneridge") is a limited liability company organized under the laws of the State of Minnesota, with its principal place of business located at 118 South Front Street, Barnesville, MN 56514.

2.    Plaintiff Levridge, LLC ("Levridge") is a limited liability company organized under the laws of the State of Minnesota, with its principal place of business located at 118 South Front Street, Barnesville, MN 56514.

3.     The sole member of Stoneridge, and the sole member of Levridge, is Stoneridge Companies, LLC.  Both Stoneridge and Levridge are wholly-owned subsidiaries of Stoneridge Companies, LLC.

4.     Stoneridge Companies, LLC is a limited liability company organized under the laws of the State of Minnesota, with its principal place of business located at 118 South Front Street, Barnesville, MN 56514.

5.     The sole member of Stoneridge Companies, LLC is Stoneridge Holdings, Inc., a corporation incorporated under the laws of the State of Minnesota, with its principal place of business located at 118 South Front Street, Barnesville, MN 56514.

<u>Defendant</u>

6.     Defendant Agtegra Cooperative ("Agtegra") is a cooperative organized under the laws of the State of South Dakota, with a principal place of business and registered agent address of 908 Lamont Street South, Aberdeen, South Dakota 57401.

7.     This matter arises out of a master services agreement contract and a subsequent series of agreements between Plaintiff Stoneridge and its affiliates, on the one hand, and Defendant Agtegra, on the other hand, under which agreements plaintiffs provided certain software development, support, subscription, and hosting services to Agtegra.

8.    Agtegra is indebted to Plaintiffs in the amount of $771,067.51 (exclusive of interest or costs) for services rendered, which amount Agtegra has refused to pay, thereby breaching the agreements with Plaintiff Stoneridge and its affiliates.

9.    Jurisdiction is proper in this court pursuant to 28 U.S.C. §1332(a) and (c), as Plaintiffs and Agtegra are citizens of different states and the amount in controversy between them exceeds $75,000.00.

10.   Venue is appropriate in this court pursuant to forum selection clauses in the agreements between Plaintiffs and Agtegra.

<u>**FACTUAL ASSERTIONS**</u>

<u>The Contracts and the Work</u>

11.   On August 29, 2018, Stoneridge and Agtegra each executed a Master Services Agreement ("MSA").  That MSA provided general terms governing the relationship between Stoneridge and its affiliates, on the one hand, and Agtegra, on the other hand.  A true and correct copy of that MSA is attached to Plaintiff's Complaint as Exhibit A.

12.   The MSA provided various contractual terms between the parties, including clauses providing for, *inter alia*, forum selection, applicable law, and finance charges on any unpaid invoices submitted to Agtegra.

13.   Specifically, the MSA provided that, "[a]ny action to enforce this Agreement [the MSA] or any Supplemental Agreement or Statement of Work shall be brought

in a court of competent jurisdiction within the State of Minnesota. (MSA, Exhibit A to Complaint, ¶10e).

14.     The MSA also provided that "[i]f Stoneridge prevails in any action brought to enforce this Agreement [the MSA] or any Supplemental Agreement or Statement of Work, it shall be entitled to award of its attorney's fees, disbursements, and other costs incurred in relation to such action." (MSA, Exhibit A to Complaint, ¶10e).

15.     The MSA also provided that "[t]he terms of this Agreement [the MSA] or any Supplemental Agreement or Statement of Work entered into between Stoneridge Software and Client [Agtegra] will be governed by and construed solely in accordance with the laws of the State of Minnesota without reference to choice of law provisions." (MSA, Exhibit A to Complaint, ¶10f).

16.     The MSA also provided that "Client [Agtegra] agrees to pay all fees in a Statement of Work within 30 calendar days of the date of invoice, unless the Statement of Work provides otherwise. … Stoneridge Software may, at its option, assess a finance charge of the lesser of 18% per annum, accrued, calculated, and payable monthly, or the highest amount allowed by law, on all past due amounts due to Stoneridge Software.  Failure by Client to pay any invoice when due shall be a material breach of this Agreement and any Supplemental Agreement or Statement of Work.  Stoneridge Software will have no obligation to continue to provide

Services or other Service Deliverables if Client fails to make timely payment." (MSA, Exhibit A to Complaint, ¶10m).

17.     The MSA also provided that each party agreed to not disclose "Confidential Information" (as defined in the MSA) to third parties, except as permitted therein, and that each would disclose Confidential Information only for purposes of the parties' business relationship with each other. (MSA, Exhibit A to Complaint, ¶3c).

18.     The MSA defines "Confidential Information" as "non-public information, know-how and Trade Secrets in any form that:

> (i)     is designated as 'confidential";
>
> (ii)    a reasonable person knows or reasonably should understand to be confidential; or
>
> (iii)   include non-public information regarding either party's products or Clients, marketing and promotions, or the negotiated terms of Stoneridge Software agreements, including any and all Client Data."

(MSA, Exhibit A to Complaint, ¶3a).

19.     Subsequent to execution of the MSA, Stoneridge and Agtegra entered into a series of 'Statement of Work' agreements which detailed the work to be performed by Stoneridge.

20.     The first such Statement of Work ("SOW"), entitled "Enterprise Process Review" and dated July 19, 2018, was executed by the Stoneridge and Agtegra on

September 24, 2018. A true and correct copy of that SOW ("the EPR SOW") is attached to Plaintiff's Complaint as Exhibit B.

21.    The EPR SOW provided terms regarding the work to be performed by Stoneridge and the payment to be made by Agtegra. Specifically, the EPR SOW required Agtegra to immediately notify Stoneridge if there are any inaccuracies, disputes, and/or problems with the products or services being billed by Stoneridge to Agtegra. (EPR SOW, Exhibit B to Complaint, pg. 3).

22.    The EPR SOW also provided that any task and any associated deliverable(s) to be performed by Stoneridge would be deemed accepted by the Client [Agtegra] unless otherwise noted in writing to Stoneridge Software prior to the end of thirty (30) days after notification by Stoneridge of completion of the task or deliverable(s). (EPR SOW, Exhibit B to Complaint, pg. 5).

23.    After the EPR SOW, Stoneridge and Agtegra entered into several other Statements of Work, including:

> SOW 1 - Agronomy Implementation
> Change Request - Extension of SOW 1
> SOW 1.5 – Extension of SOW 1
> Support Agreement

24.    Stoneridge and Agtegra also negotiated, and Stoneridge performed services under, several other Statements of Work. Those Statements of Work were not signed by Agtegra, but Stoneridge performed the services described therein and Agtegra accepted the services performed under those Statements of Work, including:

SOW 1.6 – Extension of SOW 1.5
SOW KT
SOW Update and PAL

25.   Stoneridge fully performed under the MSA and the various Statements of Work with Agtegra.

26.   For each task and deliverable performed by Stoneridge, Stoneridge provided notification to Agtegra of completion.

27.   Stoneridge also invoiced Agtegra regularly for all work performed.

28.   In the course of Stoneridge's work, Agtegra questioned certain invoices, and Stoneridge worked with Agtegra to come to mutual agreement on those disputed invoices.

29.   Agtegra initially paid Stoneridge for the invoiced work, but later fell behind in paying outstanding invoices.

30.   Agtegra did not notify Stoneridge of any inaccuracies, disputes, and/or problems with the outstanding invoices it received from Stoneridge, or with the products or services being billed by Stoneridge to Agtegra, or of rejection of any task or deliverable.

31.   Agtegra later requested credits from Stoneridge for some work.  In response, Stoneridge proposed that discounts be negotiated to future work performed by Stoneridge to resolve any such requests.

7

32.     In addition, Agtegra and Levridge negotiated a Subscription Agreement for Agtegra to use the Levridge software product.   Agtegra used this subscription Levridge service, but failed to sign the Subscription Agreement, despite stating their intention to sign it and conducting a series of reviews of the document.

33.     Levridge fully performed under the Subscription Agreement by making the Levridge product available to Agtegra for its use, and Agtegra accepted the Levridge product and began paying Levridge for Agtegra's use of the Levridge product.

34.     Agtegra paid Levridge for the first six months of use of the Levridge service, but failed to pay for their continued use of the Levridge product thereafter.   A true and correct copy of latest revision to the unsigned Subscription Agreement is attached to Plaintiff's Complaint as Exhibit C.

35.     Agtegra did not notify Levridge of any inaccuracies, disputes, and/or problems with the invoices it received from Levridge.

36.     Agtegra questioned some of the functionality of the Levridge service, but did not reject the product or services being billed by Levridge to Agtegra, or any task or deliverable provided by Levridge

37.     To the extent any discussions took place between Stoneridge and Agtegra regarding Agtegra's satisfaction with Stoneridge's services, Stoneridge offered to give discounts on future work to be performed, as a courtesy to Agtegra, if Agtegra paid its outstanding amounts owed to Stoneridge and Levridge.

38.   Stoneridge also offered to provide certain discounts if Agtegra paid its outstanding owed balances.  A true and correct copy of an e-mail from Eric Newell of Stoneridge to Dan Rosenbaum of Agtegra discussing potential credits is attached to Plaintiffs' Complaint as Exhibit D.

39.   Agtegra has made no payments to Stoneridge or Levridge since March 11, 2021.

40.   On October 13, 2020, Agtegra informed Stoneridge that Agtegra would no longer be moving forward with Stoneridge and the Levridge product, although Agtegra would continue to use the Levridge product until a replacement product was implemented.

41.   On March 8, 2021, Agtegra informed Stoneridge and Levridge that support would no longer be needed for the Levridge product – i.e., that Agtegra had implemented another product to replace the Levridge product, effective March 1, 2021.

42.   Despite repeated requests, Agtegra has failed and refused to pay the amounts invoiced to it by Stoneridge and Levridge.

43.   Agtegra is currently indebted to Stoneridge for work performed in the principal amount of $714,036.76, exclusive of interest or other costs.

44.   Agtegra is currently indebted to Levridge for unpaid subscription fees in the principal amount of $66,535.88, with interest accrued from the date of invoicing, for

a total owed in excess of $75,000.00. Interest continues to accrue on the unpaid amounts, and Levridge has and will continue to incur fees and costs associated with collection of this unpaid amount.

Disclosure of Confidential Information and Tortious Interference

45.    On June 9, 2020, Stoneridge entered into a Master Services Agreement and Statement of Work with Federated Co-ops, Inc. ("Federated"), a Minnesota cooperative.

46.    Before contracting with Stoneridge, Federated requested references from Stoneridge, and Stoneridge provided Federated with contact information for Agtegra, including that of Dan Rosenbaum, the CIO of Agtegra.

47.    Prior to June 9, 2020, Mike McMahon, the CEO of Federated, communicated with Agtegra regarding Stoneridge and the Levridge product.

48.    During the week of October 5, 2020, Eric Newell and Dustin Pagano of Stoneridge were on-site with Federated and met with Mike McMahon and Allan Larson of Federated.

49.    During meetings that week, Mike McMahon and Allan Larson of Federated shared with Eric Newell and Dustin Pagano that Agtegra had been in communication with Federated about the status of the Agtegra project.

50.     Also during those meetings, Stoneridge and Federated discussed a proposed change order framework for future billings on the Federated project.  The proposed framework was strikingly similar to proposals made by Agtegra on its project.

51.     Upon information and belief, Agtegra personnel, including Dan Rosenbaum, shared with personnel of Federated, including Mike McMahon and Allan Larson, details of negotiated terms of Agtegra's agreements with Stoneridge Software.

52.     At the conclusion of the meetings held the week of October 5, 2020, Federated reaffirmed its decision to continue their implementation project with Stoneridge and Levridge.

53.     Approximately one week later, Agtegra informed Stoneridge that Agtegra would no longer be moving forward with Stoneridge.

54.     Subsequently, on February 19, 2021, Federated informed Stoneridge that they wanted to place the Federated implementation on hold.  During this conversation, Mike McMahon told Dustin Pagano that Mr. McMahon had been in contact with Agtegra regarding their decision to not proceed with Stoneridge and Levridge, and that he would be reaching out to Agtegra again.

55.     After February 19, 2021, Stoneridge and Federated continued to negotiate how to proceed with the Federated implantation.

56.     Upon information and belief, during this period Agtegra personnel, including Dan Rosenbaum, shared Confidential Information (as defined by the MSA) with

personnel of Federated, including Mike McMahon and Allan Larson. This further Confidential Information, upon information and belief, included non-public information about Stoneridge's products and clients, terms of Stoneridge agreements, and other Confidential Information.

57.     None of the Confidential Information shared by Agtegra with Federated was disclosed for the purpose of Agtegra's business relationship with Stoneridge.

58.     Despite negotiations thereafter with Federated, Stoneridge was informed on April 16, 2021 that Federated was terminating its contract with Stoneridge. At that time, the remaining portion of the Federated project was $870,711.70.

## COUNT I – BREACH OF CONTRACT
### (Stoneridge vs. Agtegra)

59.     Plaintiffs reallege each and every matter pled in the foregoing paragraphs of their Complaint as if fully restated herein.

60.     Stoneridge and Agtegra were parties to various contracts, including the MSA and several SOWs, each of which required Agtegra to pay Stoneridge for its services provided.

61.     Stoneridge performed under the MSA and the various Statements of Work with Agtegra.

62.     Agtegra had a duty, under the MSA and SOWs, to pay Stoneridge for the services provided.

63.    For each task and deliverable performed by Stoneridge, Stoneridge provided notification to Agtegra of completion.

64.    Stoneridge also invoiced Agtegra regularly for all work performed.

65.    Agtegra did not notify Stoneridge of any inaccuracies, disputes, and/or problems with the invoices it received from Stoneridge, or with the products or services being billed by Stoneridge to Agtegra, or of rejection of any task or deliverable.

66.    Despite repeated requests, Agtegra has failed and refused to pay the amounts invoiced to it by Stoneridge and Levridge.

67.    Agtegra is currently indebted to Stoneridge for work performed in the principal amount of $714,036.76, exclusive of interest or other costs.

68.    In addition, Agtegra has, upon information and belief, breached the MSA with Stoneridge by sharing Confidential Information (as defined in the MSA) with Federated.

69.    Therefore, Stoneridge is entitled to judgment against Agtegra in the amount of $714,036.76, plus pre-judgment interest, as well as Stoneridge's attorneys' fees, costs, and disbursements.

## COUNT II – TORTIOUS INTERFERENCE WITH CONTRACT
(Stoneridge vs. Agtegra)

70.    Plaintiffs reallege each and every matter pled in the foregoing paragraphs of their Complaint as if fully restated herein.

71.     On June 9, 2020, Stoneridge entered into a Master Services Agreement and Statement of Work with Federated Co-ops, Inc. ("Federated"), a Minnesota cooperative.

72.     Before contracting with Stoneridge, Federated requested references from Stoneridge, and Stoneridge provided Federated with contact information for Agtegra, including that of Dan Rosenbaum, the CIO of Agtegra.

73.     Prior to June 9, 2020, Mike McMahon, the CEO of Federated, communicated with Agtegra regarding Stoneridge and the Levridge product.

74.     During the week of October 5, 2020, Eric Newell and Dustin Pagano of Stoneridge were on-site with Federated and met with Mike McMahon and Allan Larson of Federated.

75.     During meetings that week, Mike McMahon and Allan Larson of Federated shared with Eric Newell and Dustin Pagano that Agtegra had been in communication with Federated about the status of the Agtegra project.

76.     Also during those meetings, Stoneridge and Federated discussed a proposed change order framework for future billings on the Federated project. The proposed framework was strikingly similar to proposals made by Agtegra on its project.

77.     Upon information and belief, Agtegra personnel, including Dan Rosenbaum, shared with personnel of Federated, including Mike McMahon and Allan Larson, details of negotiated terms of Agtegra's agreements with Stoneridge Software.

78.   Upon information and belief, Agtegra was aware prior to October 5, 2020 that a contract existed between Stoneridge and Federated.

79.   At the conclusion of the meetings held the week of October 5, 2020, Federated reaffirmed its decision to continue their implementation project with Stoneridge and Levridge.

80.   Approximately one week later, Agtegra informed Stoneridge that Agtegra would no longer be moving forward with Stoneridge.

81.   Subsequently, on February 19, 2021, Federated informed Stoneridge that they wanted to place the Federated implementation on hold.  During this conversation, Mike McMahon told Dustin Pagano that Mr. McMahon had been in contact with Agtegra regarding their decision to not proceed with Stoneridge and Levridge, and that he would be reaching out to Agtegra again.

82.   Upon information and belief, Agtegra intentionally shared Confidential Information of Stoneridge relating to, *inter alia,* non-public information about Stoneridge's products and clients, terms of Stoneridge agreements, and other Confidential Information.   Specifically, this information included: Agtegra's opinions as to the Stoneridge and Levridge products; the status of the Agtegra implementation; terms of Stoneridge agreements, including change orders and negotiations with Stoneridge; and other Confidential Information.

83.   Agtegra shared this Confidential Information with Federated intentionally.

84.    Agtegra shared this Confidential Information without justification, as it was not disclosed for the purpose of Agtegra's business relationship with Stoneridge.

85.    Agtegra's disclosure of Confidential Information to Federated caused Federated to not continue with its contractual relationship with Stoneridge.

86.    Agtegra's disclosure of Confidential Information interfered with Stoneridge's contract with Federated, and caused Stoneridge damages.

87.    Specifically, Agtegra's conduct caused Federated to terminate Stoneridge from the Federated project, for which project Stoneridge had a remaining contract amount owed of $870,711.70.

88.    Stoneridge is therefore entitled to judgment against Agtegra for tortious interference with the Federated contract, in the amount of Stoneridge's profits on the remaining contract balance of $870,711.70, plus accrued interest through the date of trial, plus Stoneridge's costs, disbursements, and attorneys' fees as may be allowed by law or contract, in an amount not presently ascertained but to be proven at trial.

### COUNT III – BREACH OF CONTRACT
(Stoneridge vs. Agtegra)

89.    Plaintiffs reallege each and every matter pled in the foregoing paragraphs of their Complaint as if fully restated herein.

90.    Stoneridge and Agtegra were parties to the MSA, which prohibited disclosure by Agtegra of Stoneridge's Confidential Information.

91.     Despite this prohibition on disclosure, Agtegra wrongfully disclosed Confidential Information of Stoneridge to Federated relating to, *inter alia,* non-public information about Stoneridge's products and clients, terms of Stoneridge agreements, and other Confidential Information.   Specifically, this information included: Agtegra's opinions as to the Stoneridge and Levridge products; the status of the Agtegra implementation; terms of Stoneridge agreements, including change orders and negotiations with Stoneridge; and other Confidential Information.

92.     This disclosure was not justified or authorized, and was not made for purposes of the parties' business relationship with each other.

93.     As a result of this unauthorized disclosure of Stoneridge's Confidential Information from Agtegra to Federated, Federated terminated its contractual relationship with Stoneridge.

94.     Agtegra's disclosure of Confidential Information was a breach of the MSA, and that breach caused Stoneridge damages.

95.     Specifically, Agtegra's conduct caused Federated to terminate Stoneridge from the Federated project, for which project Stoneridge had a remaining contract amount owed of $870,711.70.

96.     Stoneridge is therefore entitled to judgment against Agtegra for breach of contract, in the amount of Stoneridge's profits on the remaining Federated contract balance of $870,711.70, plus accrued interest through the date of trial, plus

Stoneridge's costs, disbursements, and attorneys' fees as may be allowed by law or contract, in an amount not presently ascertained but to be proven at trial.

## COUNT IV – UNJUST ENRICHMENT
(Stoneridge vs. Agtegra)

97.   Plaintiffs reallege each and every matter pled in the foregoing paragraphs of their Complaint as if fully restated herein.

98.   Pursuant to the MSA and the SOWs, and at the request of Agtegra, Stoneridge provided software services to Agtegra.

99.   Agtegra knowingly received the value of Stoneridge's services, which had a reasonable value of $714,036.75.

100.  Agtegra has benefitted from receiving the software services of Stoneridge, and Stoneridge is entitled to receive compensation for its services provided to Agtegra.

101.  Stoneridge has a reasonable expectation of receiving the agreed-upon compensation for its software services, and Agtegra will be unjustly enriched if they are allowed to enjoy the benefits of Stoneridge's software services without compensating Stoneridge.

102.  Despite demand for payment, Agtegra has failed and refused to pay Stoneridge for its software services.

103.  Stoneridge is therefore entitled to judgment against Agtegra for the reasonable value of the software services provided to Agtegra, in the amount of $714,036.75, plus accrued interest through the date of trial, plus Stoneridge's costs, disbursements,

and attorneys' fees as may be allowed by law or contract, in an amount not presently ascertained but to be proven at trial.

## COUNT V – ACCOUNT STATED
(Stoneridge vs. Agtegra)

104.   Plaintiffs reallege each and every matter pled in the foregoing paragraphs of their Complaint as if fully restated herein.

105.   Stoneridge sent periodic billing statements and/or demands for payment to Agtegra indicating the amounts owed for services requested by Agtegra and provided by Stoneridge.

106.   Agtegra did not object to such billing statements, and did not object to or question the accounting of charges stated thereon within a reasonable period of time.

107.   Agtegra retained Stoneridge's billing statements for more than a reasonable period of time in which to have raised an objection to the form and substance of the billing statements or the charges therein.

108.   Therefore, an account has been stated between Stoneridge and Agtegra.

109.   Stoneridge is therefore entitled to judgment against Agtegra for the software services provided to Agtegra, in the amount of $714,036.75, plus accrued interest through the date of trial, plus Stoneridge's costs, disbursements, and attorneys' fees as may be allowed by law or contract, in an amount not presently ascertained but to be proven at trial.

## COUNT VI – BREACH OF CONTRACT
### (Levridge vs. Agtegra)

110.   Plaintiffs reallege each of the above paragraphs as if fully restated herein.

111.   Levridge and Agtegra were parties to a subscription contract, which required Agtegra to pay Levridge for its software services provided.

112.   Levridge performed under the subscription agreement with Agtegra, and Agtegra used the Levridge software product as its production system from February 1, 2020 to March 8, 2021.

113.   Agtegra had a duty under the subscription agreement to pay Levridge for its use of the Levridge product.

114.   Levridge invoiced Agtegra regularly for the Levridge subscription service.

115.   Agtegra did not notify Levridge of any inaccuracies, disputes, and/or problems with the invoices it received from Levridge nor of rejection of any task or deliverable.

116.   Despite repeated requests, Agtegra has failed and refused to pay amounts invoiced to it by Levridge.

117.   Agtegra is currently indebted to Levridge for its use of the Levridge product in the principal amount of $66,535.88, with interest accrued from the date of invoicing, for a total owed in excess of $75,000.00.

118.   Therefore, Levridge is entitled to judgment against Agtegra in an amount in excess of $75,000.00, the exact amount to be proven at trial, as well as Levridge's attorneys' fees, costs, and disbursements.

## COUNT VII – UNJUST ENRICHMENT
(Levridge vs. Agtegra)

119.   Plaintiffs reallege each and every matter pled in the foregoing paragraphs of their Complaint as if fully restated herein.

120.   Pursuant to the Subscription Agreement, and at the request of Agtegra, Levridge provided software services to Agtegra.

121.   Agtegra knowingly received the value of Levridge's services, which had a reasonable value in excess of $66,535.88.

122.   Agtegra has benefitted from receiving the software services of Levridge, and Levridge is entitled to receive compensation for its services provided to Agtegra.

123.   Levridge has a reasonable expectation of receiving the agreed-upon compensation for its software services, and Agtegra will be unjustly enriched if they are allowed to enjoy the benefits of Levridge's software services without compensating Levridge.

124.   Despite demand for payment, Agtegra has failed and refused to pay Levridge for its software services.

125.   Levridge is therefore entitled to judgment against Agtegra for the reasonable value of the software services provided to Agtegra, plus accrued interest through the

date of trial, plus Levridge's costs, disbursements, and attorneys' fees as may be allowed by law or contract, in an amount in excess of $75,000.00 to be proven at trial.

## COUNT VIII – ACCOUNT STATED
### (Levridge vs. Agtegra)

126.    Plaintiffs reallege each and every matter pled in the foregoing paragraphs of their Complaint as if fully restated herein.

127.    Levridge sent periodic billing statements and/or demands for payment to Agtegra indicating the amounts owed for services requested by Agtegra and provided by Levridge.

128.    The billing statements sent to Agtegra and retained by them indicated an amount owed to Stoneridge of $66,535.88.

129.    Agtegra did not object to such billing statements, and did not object to or question the accounting of charges stated thereon within a reasonable period of time.

130.    Agtegra retained Levridge's billing statements for more than a reasonable period of time in which to have raised an objection to the form and substance of the billing statements or the charges therein.

131.    Therefore, an account has been stated between Levridge and Agtegra.

132.    Levridge is therefore entitled to judgment against Agtegra on an account stated for the reasonable value of the software services provided to Agtegra, plus accrued interest through the date of trial, plus Levridge's costs, disbursements, and

attorneys' fees as may be allowed by law or contract, in an amount in excess of $75,000.00 to be proven at trial.

**WHEREFOR**E, Plaintiffs Stoneridge and Levridge demand judgment against Defendant Agtegra as follows:

1.      As to Count I of the Complaint, for judgment in favor of Stoneridge against Agtegra for breach of contract, in an amount in excess of $75,000.00 with the precise amount to be proven at trial, plus interest through entry of judgment, plus Stoneridge's costs, disbursements, and attorneys' fees;

2.      As to Count II of for judgment in favor of Stoneridge against Agtegra for tortious interference in excess of $75,000.00, in an exact amount not presently determined but to be proven at trial, plus interest through entry of judgment, plus Stoneridge's costs, disbursements, and attorneys' fees as may be allowed by law;

3.      As to Count III of the Complaint, for judgment in favor of Stoneridge against Agtegra for breach of contract, in an amount in excess of $75,000.00 with the precise amount to be proven at trial, plus interest through entry of judgment, plus Stoneridge's costs, disbursements, and attorneys' fees;

2.      In the alternative, as to Count IV of the Complaint, for judgment in favor of Stoneridge against Agtegra for unjust enrichment in excess of $75,000.00, in an amount in excess of $75,000.00 with the precise amount to be proven at trial, plus

interest through entry of judgment, plus Stoneridge's costs, disbursements, and attorneys' fees as may be allowed by law;

3.      In the alternative, as to Count V of the Complaint, for judgment in favor of Stoneridge against Agtegra for account stated, in an amount in excess of $75,000.00 with the precise amount to be proven at trial, plus interest through entry of judgment, plus Stoneridge's costs, disbursements, and attorneys' fees;

4.      As to Count VI of the Complaint, for judgment in favor of Levridge against Agtegra for breach of contract, in an amount in excess of $75,000.00 with the precise amount to be proven at trial, plus interest through entry of judgment, plus Levridge's costs, disbursements, and attorneys' fees;

5.      In the alternative, as to Count VII of the Complaint, for judgment in favor of Levridge against Agtegra for unjust enrichment in excess of $75,000.00, in an amount in excess of $75,000.00 with the precise amount to be proven at trial, plus interest through entry of judgment, plus Levridge's costs, disbursements, and attorneys' fees as may be allowed by law;

6.      In the alternative, as to Count VIII of the Complaint, for judgment in favor of Levridge against Agtegra for account stated, in an amount in excess of $75,000.00 with the precise amount to be proven at trial, plus interest through entry of judgment, plus Levridge's costs, disbursements, and attorneys' fees; and

8.      For such other and further relief as the Court deems just and equitable.

December 29, 2021                    **BURNS & HANSEN, P.A.**

                                     /s/Barton C. Gernander
                                     Barton C. Gernander
                                     MN ID# 026779X
                                     bgernander@burnshansen.com
                                     8401 Wayzata Boulevard, Suite 300
                                     Minneapolis, MN 55426
                                     Telephone: (952) 564-6258
                                     Facsimile:  (952) 564-6263

                                     Attorneys for Plaintiff